THE STATE EX REL. KOKOSING CONSTRUCTION COMPANY, INC., APPELLEE,
*v.* OHIO BUREAU OF WORKERS' COMPENSATION, APPELLANT.

[Cite as *State ex rel. Kokosing Constr. Co., Inc. v. Ohio Bur. of Workers' Comp.,* 102 Ohio St.3d 429, 2004-Ohio-3664.]

(No. 2003–1897—Submitted May 25, 2004—Decided July 28, 2004.)

**Per Curiam.**

{¶ 1} Gregory D. Neff was an ironworker for many years. In the 1980s, claimant sustained at least two industrial back injuries and also hurt his back in a 1985 car accident. Several surgeries arose from these injuries.

{¶ 2} In early 1992, Neff became employed by appellee, Kokosing Construction Company, Inc., a self-insured employer. On March 9, 1992, Neff told his employer that he had just slipped while on the roof and injured his back. Neff later filed a workers' compensation claim for the injury, which Kokosing certified as valid. Kokosing paid medical bills and compensation thereafter.

{¶ 3} In 1997, Neff, motivated by guilt, walked into a local FBI office and reported that he had fabricated the accident at Kokosing in order to get renewed treatment for back pain that had plagued him since the 1980s. The FBI referred the matter to appellant, Bureau of Workers' Compensation, who alerted its Special Investigations Department, where Neff repeated his story.

{¶ 4} On April 25, 1997, Kokosing asked the commission to exercise its continuing jurisdiction to (1) deny the claim based on Neff's confession and (2) order reimbursement to Kokosing of all payments made to Neff. While this matter was pending, Kokosing and Neff entered into a stipulation and agreement. In exchange for Kokosing's agreement to forgo any action against Neff's residence, Neff, among other things, reiterated his admission that the accident did not occur, concurred in the denial of his claim, and agreed that if he became re-employed he would repay Kokosing $100 per week. This stipulation and agreement was filed in the Stark County Probate Court as part of guardianship

proceedings and was also incorporated into an October 28, 1997 ex parte commission order that denied the claim in its entirety and ordered reimbursement pursuant to the filed document.

{¶ 5} According to Kokosing, Neff repaid only $400 as of August 2001, leaving Kokosing with $133,419.26 in unreimbursed expenses related to the fraudulent claim. This prompted Kokosing's request for reimbursement from the state surplus fund pursuant to R.C. 4123.512(H) and *State ex rel. Sysco Food Serv. of Cleveland, Inc. v. Indus. Comm.* (2000), 89 Ohio St.3d 612, 734 N.E.2d 361, which held that the 1993 amendments to R.C. Chapter 4123 did not eliminate a self-insured's ability to seek surplus fund reimbursement.

{¶ 6} An underwriting supervisor from the bureau's Self–Insured Department denied Kokosing's request, finding *Sysco* inapplicable:

{¶ 7} "In [*Sysco*], the Court allowed reimbursement from the Surplus fund in a claim that was initially allowed by the Industrial Commission and subsequently overturned. In the above-mentioned claim there is not an initial decision issued by the Industrial Commission ordering the Self-insured employer to pay funds on this claim that was later overturned."

{¶ 8} The bureau's Self–Insured Review Panel reached the same conclusion on appeal:

{¶ 9} "*Sysco* does not mandate surplus fund reimbursement under the circumstances described. The *Sysco* case restores surplus fund reimbursement as a remedy for self-insuring employers for situations involving a 'straight line appeal,' when the employer successfully appeals an Industrial Commission order. The Panel finds that the *Sysco* case does not require reimbursement when a self-insuring employer initially pays compensation, with or without dispute, and later obtains additional information causing it to second-guess the propriety of the payment, or raise a new dispute unrelated to the original dispute."

{¶ 10} That decision was affirmed by a designee of the bureau administrator on September 13, 2002.

{¶ 11} The Court of Appeals for Franklin County, however, did not agree. It found that *Sysco* did control and rejected the bureau's contention that the case applied only to claims overturned as a result of an employer's appeal of the claim's initial allowance. Accordingly, a writ of mandamus was granted that vacated the bureau's order and commanded the bureau to enter a new decision reimbursing Kokosing from the state surplus fund.

{¶ 12} This cause is now before this court upon an appeal as of right.

{¶ 13} No one disputes Neff's lack of entitlement to the money he received. No one disputes Kokosing's entitlement to repayment. This dispute instead centers on the question of which is the proper means of recovery—direct

recoupment from claimant or surplus fund reimbursement. For the following reasons, we find that Kokosing is eligible for the latter, and affirm the court of appeals' judgment.

{¶ 14} Created under R.C. 4123.34(B), the surplus fund is made up of both state-fund and self-insured employer contributions. R.C. 4123.34(B); 4123.35(J); Ohio Adm.Code 4123–17–32.

{¶ 15} The primary purpose of the surplus fund is as an uncommitted reserve for maintaining the state insurance fund's solvency, R.C. 4123.35(B), but it serves other purposes as well. For example, under the state's handicap reimbursement program, payments are made from this fund to participating self-insured employers to encourage the hiring and retention of workers suffering from certain enumerated handicaps. R.C. 4123.343(B).

{¶ 16} The surplus fund was also, for years, the means by which a self-insured employer was reimbursed for compensation paid in claims that were subsequently overturned either administratively or judicially.

{¶ 17} Before October 20, 1993, former R.C. 4123.515 provided:

{¶ 18} "Payment of an award made pursuant to a decision of the district hearing officer in a claim shall commence twenty days after the date of the decision * * *. In all other cases, if the decision of the district hearing officer is appealed by the employer or the administrator, the bureau of worker's compensation shall withhold compensation and benefits during the course of the appeal to the regional board of review, but where the regional board rules in favor of the claimant, compensation and benefits shall be paid by the bureau or by the self-insuring employer whether or not further appeal is taken. *If the claim is subsequently denied, in whole or in part, payments shall be charged to the surplus fund created under division (B) of section 4123.34 of the Revised Code,* and if the employer is a state risk such amount shall not be charged to the employer's experience and *if the employer is a self-insurer such amount shall be paid to the self-insurer from the surplus fund.*" (Emphasis added.) 143 Ohio Laws, Part II, 3353.

{¶ 19} Former R.C. 4123.519(G) similarly provided:

{¶ 20} "An appeal from a decision of the commission or any action filed in a case in which an award of compensation has been made shall not stay the payment of compensation * * * during the pendency of the appeal. *In the event payments are made to a claimant which should have not been made under the decision of the appellate court, the amount thereof shall be charged to the surplus fund under division (B) of section 4123.34 of the Revised Code.* In the event the employer is a state risk, the amount shall not be charged to the employer's experience. *In the event the employer is a self-insurer, the amount shall be paid*

*to the self-insurer from the surplus fund.*" (Emphasis added.) 143 Ohio Laws, Part II, 3355.

{¶ 21} These statutes provided dollar-for-dollar reimbursement via direct payment from the surplus fund to the self-insured employer. On October 20, 1993, Am.Sub.H.B. No. 107 repealed R.C. 4123.515 and 4123.519, and substituted R.C. 4123.511(J) and 4123.512(H). R.C. 4123.511(J) directed:

{¶ 22} "Upon the final administrative or judicial determination, if a claimant is found to have received compensation to which he was not entitled, his employer, if he is a self-insuring employer, or the bureau, shall withhold from any amount to which the claimant becomes entitled pursuant to any claim, past, present, or future, under Chapter 4121., 4123., 4127., or 4131. of the Revised Code, the amount to which the claimant was not entitled * * *." 145 Ohio Laws, Part II, 3152.

{¶ 23} The statute provided a graduated withholding schedule that allowed the claimant to retain some amount of weekly benefit during the repayment process.

{¶ 24} R.C. 4123.512(H) complemented 4123.511(J). It stated:

{¶ 25} "An appeal from an order issued under division (E) of section 4123.511 of the Revised Code or any action filed in court in a case in which an award of compensation has been made shall not stay the payment of compensation under the award * * * during the pendency of the appeal. *If, in a final administrative or judicial action, it is determined that payments of compensation or benefits, or both, made to or on behalf of a claimant should not have been made, the amount thereof shall be charged to the surplus fund under division (B) of section 4123.34 of the Revised Code.* In the event the employer is a state risk, the amount shall not be charged to the employer's experience. *In the event the employer is a self-insuring employer, the self-insuring employer shall deduct the amount from the paid compensation [the self-insuring employer] reports to the administrator under division (K) of section 4123.35 of the Revised Code.*" (Emphasis added.) 145 Ohio Laws, Part II, 3155.

{¶ 26} In 1998, self-insured Sysco Food Services of Cleveland, Inc. petitioned this court for relief from a commission order denying it surplus fund reimbursement. *State ex rel. Sysco Food,* 89 Ohio St.3d 612, 734 N.E.2d 361. Sysco had contested a claimant's workers' compensation claim from its inception, but was required to pay compensation and benefits during the litigation. When the Cuyahoga County Common Pleas Court disallowed the claim in its entirety, Sysco sought surplus fund recovery. The commission refused, finding that Sysco's recoupment rights were limited to recovery from the claimant under R.C. 4123.511(J).

{¶ 27} We disagreed. We pointed out the near impossibility of a self-insured employer ever fully recovering compensation paid in a claim that is later

overturned on appeal. On that basis, we held that R.C. 4123.511(J), as applied to self-insureds, violated the right-to-a-remedy guarantee of Section 16, Article I of the Ohio Constitution. Id., 89 Ohio St.3d at 614, 734 N.E.2d 361. Looking further at language in R.C. 4123.512(H) as well as language in a 1984 decision, *Youghiogheny & Ohio Coal Co. v. Mayfield* (1984), 11 Ohio St.3d 70, 11 OBR 315, 464 N.E.2d 133, we ruled that the 1993 amendments must be read as preserving the self-insured's right to reimbursement from the surplus fund. Id. at 616, 734 N.E.2d 361.

{¶ 28} In the present case, the parties debate *Sysco*'s applicability. The bureau—without any legal citation—contends that *Sysco* applies only to what it calls "straight-line appeals," i.e., an employer's appeal of the initial workers' compensation claim allowance. Because Kokosing originally certified the claim as valid and the claim was overturned in separate proceedings years later, the bureau proposes that *Sysco* does not control. This argument is unpersuasive.

{¶ 29} Kokosing contested Neff's claim years later because evidence of fraud did not surface until years later. Like *Sysco*, Kokosing paid extensive compensation and benefits pursuant to an award that was eventually overturned. The bureau has offered no compelling legal, practical, or financial reason for treating Kokosing any differently from Sysco or for confining surplus fund reimbursement to "straight-line appeals."

{¶ 30} To the contrary, the bureau's position requires us to read into R.C. 4123.512(H) language that is not there—something we should not do. See *Cleveland Elec. Illum. Co. v. Cleveland* (1988), 37 Ohio St.3d 50, 524 N.E.2d 441, paragraph three of the syllabus. The statute limits reimbursement to situations involving "a final administrative or judicial action [where] it is determined that payments * * * should not have been made." The bureau, however, would rewrite the statute to limit reimbursement to cases involving "a final administrative or judicial action on appeal from the order awarding compensation."

{¶ 31} This case involves a deliberate fabrication of an industrial accident. Kokosing initially relied on what it believed to be claimant's good-faith assertion of an injury and expended tens of thousands of dollars in compensation and benefit payments before claimant's conscience generated a confession. Kokosing then obtained what the statute requires for surplus fund reimbursement—an administrative declaration that the claim was fraudulent and that the allowance, and the consequent payment of compensation and benefits, should never have occurred. R.C. 4123.512(H) and *Sysco* require no more.

{¶ 32} The judgment of the court of appeals is affirmed.

Judgment affirmed.

MOYER, C.J., RESNICK, F.E. SWEENEY, PFEIFER, LUNDBERG STRATTON, O'CONNOR and O'DONNELL, JJ., concur.

Vorys, Sater, Seymour & Pease, L.L.P., Bradley K. Sinnott and Kendra L. Carpenter, for appellee.

Jim Petro, Attorney General, and Gerald H. Waterman, Assistant Attorney General, for appellant.